William GRIFFIN, Petitioner,

v.

WARDEN, WEST VIRGINIA STATE PENITENTIARY, Respondent.

No. 75–1061.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1975.

Decided June 9, 1975.

Ralph S. Spritzer, Philadelphia, Pa. [court-appointed counsel], for appellant.

E. Leslie Hoffman, III, Asst. Atty. Gen. of W. Va. (Chauncey H. Browning, Jr., Atty. Gen. of W. Va., and Richard E. Hardison, Deputy Atty. Gen. of W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Circuit Judge, CRAVEN and ANDERSON,* Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal by John William Griffin from the denial of habeas relief by the district court. The petitioner was convicted of grand larceny on December 9, 1970. Pursuant to West Virginia's Habitual Offender Act, an information was filed charging that Griffin had been twice before convicted of crime punishable by imprisonment in a penitentiary. Upon such proof the West Virginia court has a mandatory duty to sentence such a person to life imprisonment,[1] and Griffin is now serving a life sentence.

In Hart v. Coiner, 483 F.2d 136 (4th Cir. 1973), cert. denied, 415 U.S. 983, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974), we held that the underlying offenses upon which the status of habitual offender depends can be of such a nature as to make a life sentence unconstitutionally disproportionate and so grossly excessive as to amount to cruel and unusual punishment. But Griffin's offenses are not at all like those of Hart. Griffin previously broke and entered a gasoline station and grocery store in Harrison County (1964) and thereafter committed burglary of a residence in Taylor County (1967). These and grand larceny are serious offenses that clearly involve the potentiality of violence and danger to life as well as property. Whether or not Griffin may be actually deserving of such extreme punishment is not within our province to decide; we hold only

that the imposition of a life sentence predicated upon these particular three offenses does not offend the eighth amendment.

We are more concerned about petitioner's contention, ably briefed and argued by scholarly counsel, that for a state to vest in a prosecuting officer unguided and unbridled discretion to seek or refrain from seeking imposition of a mandatory life sentence violates the due process and equal protection clause of the fourteenth amendment. We are aware of increasing concern with the application of law without disclosure of the rationale of application and its potentiality for arbitrary and capricious abuse. It is increasingly urged that the dispensation of justice ought to be visible and that the reason for punishment should be apparent. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

But this is not the first time that a similar attack upon West Virginia's Habitual Offender Act has been launched. Twice before its constitutionality has been considered and affirmed by the United States Supreme Court. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912). In Boles Mr. Justice Clark specifically noted the contention that although the prosecutor could file an information triggering a life sentence against all persons coming within the statutory standard, it was nevertheless done only in a minority of cases. 368 U.S. at 455–56, 82 S.Ct. 501. It is true that the Court in Oyler based its decision, in large part, upon failure of proof to show why some few were chosen and others spared. But that is also the situation here. The record does not disclose why Griffin was singled out and others were not.[2]

* Second Circuit, Sitting by Designation.

1. W.Va.Code § 61–11–18 (1966).

2. Professor Spritzer tells us that there are no current figures available but that as of 1956, in the preceding 16 years the habitual offender information was filed in only 79 of 983 cases in which it might have been filed. See Brown, West Virginia Habitual Criminal Law, 59 W.Va.L.Rev. 30, 36–45 (1956).

That the petitioner here does not press that he has received harshness while others have received leniency does not improve his case. He cannot press that point because *Oyler* has decided it against him. All he is left with is the contention, which we do not lightly reject, that unbridled and unguided discretion in the prosecutor, in the light of the development of procedural due process, violates the fourteenth amendment.

Section 61–11–18 of the state code provides, in relevant part, that "[w]hen it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life." Section 61–11–19 states:

> It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledges in open court that he

is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen [§ 61–11–18] of this article on a second or third conviction as the case may be. (emphasis added).

Griffin had never actually been sentenced to and confined in a penitentiary for either of his two previous offenses. The statute has been interpreted as requiring only that the previous convictions be such that imprisonment in a penitentiary *could* have been imposed. State ex rel. Johnson v. Skeen, 140 W.Va. 896, 87 S.E.2d 521 (1955), cert. denied, 351 U.S. 956, 76 S.Ct. 854, 100 L.Ed. 1478 (1956).

Griffin urges that § 61–11–19 places a mandatory duty on the prosecuting attorney to *file* the recidivist information when he knows about a former sentence or sentences to the penitentiary. We disagree. The first sentence establishes only a duty to give information to the court. We read it to mean that the prosecutor would fully comply with his duty by simply stating the facts to the court. Having done so, he is then free to file an information or to choose not to file one. The prosecutor's discretion is thus absolute and unbridled whether the convicted person has actually served one or more sentences in the penitentiary or has simply been convicted of offenses that are so punishable. We think the duty to report contemplates a West Virginia practice of disclosure in open court of the prosecutor's decision and invites inquiry by the state judge as to his reasons.

We reject Griffin's contention that the prosecutor has no discretion not to file an information as to persons actually sentenced to the penitentiary and that his discretion is absolute only as to that smaller class of cases as to which Griffin's is representative, *i. e.*, where the prisoner was not actually sent to serve a sentence in a penitentiary. Thus we think the effort to distinguish *Oyler* fails, and we believe that what Mr. Justice Clark said for the Court in *Oyler*

controls disposition of this case: "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," where the choice is not made "upon an unjustifiable standard such as race, religion, or other arbitrary classification." 368 U.S. at 456, 82 S.Ct. at 506.

Affirmed.