**William James RUMMEL,
Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.**

**No. 76–2946.**

United States Court of Appeals,
Fifth Circuit.

March 6, 1978.

Rehearing Granted April 21, 1978.

William James Rummel, pro se.

Scott J. Atlas, Houston, Tex. (court-appointed), for petitioner-appellant.

John L. Hill, Atty. Gen., Dunklin Sullivan, Asst. Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., Joe B. Dibrell, Gilbert J. Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, GOLDBERG, and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Petitioner William James Rummel appeals the district court's denial of habeas corpus relief from state confinement. He complains that the enhanced sentence he received constituted cruel and unusual punishment in violation of the eighth amendment and that his court-appointed attorney rendered ineffective assistance of counsel in violation of his sixth amendment rights. Because we hold that Rummel's life sen-

tence is so grossly disproportionate to his crimes that it violates the Cruel and Unusual Punishments Clause, we do not reach the question whether Rummel's trial counsel rendered adequate assistance.

In January 1973, a Texas grand jury indicted Rummel for the felony offense of obtaining $120.75 under false pretenses. The indictment also charged him with having two prior felony convictions: In 1964 he presented a credit card with the intent to defraud of approximately $80, and in 1969 he passed a forged instrument with a face value of $28.36. Rummel pled not guilty to the false pretense indictment, but a jury found him guilty as charged. After the state proved his two prior convictions, Rummel received an enhanced sentence of life imprisonment under the Texas habitual criminal statute then applicable, Tex. Penal Code Ann. art. 63 (Vernon 1925).[1] On appeal, the Texas Court of Criminal Appeals affirmed his conviction. *Rummel v. State*, 509 S.W.2d 630 (Tex.Cr.App.1974). Rummel applied for post-conviction relief and raised in the Texas courts the issues now before us, but his application was denied without a hearing. Then Rummel sought habeas corpus relief in the federal district court, which also denied his petition without a hearing.

Article 63 requires the trial court to sentence a defendant to life imprisonment upon a third conviction for any felony, without consideration of any lesser penalty. On its face, this statute does not violate the eighth amendment. *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). Rummel does not maintain that Article 63 as written violates the eighth amendment, but that Texas could not apply its inflexible life imprisonment stricture of Article 63 to him because it abridged his protection against cruel and unusual punishment.[2]

In addition to limiting the kinds of punishment that a state may impose and placing substantive limits on what a state may declare criminal and punish as such, the Cruel and Unusual Punishments Clause proscribes amounts of punishment which are grossly disproportionate to the severity of the crime. *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711, 742 (1977). While the Supreme Court has yet to hold a sentence cruel and unusual for length alone, its reasoning never has suggested that a disproportionately long prison sentence would be immune from eighth amendment challenge.[3] In *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1909), the Court held that a provision of the Philippine Code of Criminal Procedure allowing the imposition of a 15-year sentence to hard and painful labor in chains for a false entry on an official report violated the eighth amendment. The Court found the Code's minimum penalty of 12 years amazing in light of the American commonwealths' "precept of justice that punishment for crime should be graduated and proportioned to offense." 217 U.S. at 367, 30 S.Ct. at 549, 54 L.Ed. at 798. Subsequently, in *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1957), the Court overturned denationalization as a punishment for desertion from the military. An opinion by Chief Justice Warren, joined by three other members of the Court, put aside the death penalty as the index of the constitutional limit on punishment in these words:

> [T]he existence of the death penalty [as punishment acceptable under the Constitution] is not a license to the Government to devise any punishment short of death within the limit of its imagination.

356 U.S. at 99, 78 S.Ct. at 597, 2 L.Ed.2d at 641. Justice Brennan, concurring, also judged the constitutionality of the punishment by its proportion to the crime:

> [T]he severity of the penalty, in the case of a serious offense, is not enough to invalidate it where the nature of the penalty is rationally directed to achieve the legitimate ends of punishment.

1. Article 63 provides:
   Whoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary.
   With slight rewording, the new Texas Penal Code preserves the provisions of Article 63, now codified as Tex. Penal Code Ann. § 12.-42(d) (Vernon 1974).

2. A state may apply a concededly valid statute in a particular case in such a way as to violate provisions of the Constitution. *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

3. *But cf. Ingraham v. Wright*, 430 U.S. 651, 670 n. 39, 97 S.Ct. 1401, 1412 n. 39, 51 L.Ed.2d 711, 730 n. 39 (1977).

356 U.S. at 111, 78 S.Ct. at 603, 2 L.Ed.2d at 648.

Recently, in *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the Supreme Court amplified the proportionality component of the eighth amendment by holding that a punishment clearly permissible for some crimes is constitutionally disproportionate for others. In *Coker*, the plurality opinion by Justice White, and Justice Powell's opinion concurring in the judgment of the Court, stressed disproportionality in holding that Georgia may not execute a defendant for rape. Both of these opinions emphasized that to the maximum possible extent, objective factors must inform the decision whether a particular punishment violates the eighth amendment. The Chief Justice's dissent challenged not the disproportionality approach, but the conclusion that death was in fact an excessive penalty for the crime of rape. Thus, *Coker* heralds a more exacting weighing of the relationship of the punishment to the crime, governed by objective factors.

■ *Coker* involved capital punishment, but that is not the only sentence which can be disproportionate. A sentence to imprisonment for life is surely not so lenient as to be unquestionably proportional under the eighth amendment wherever a state might impose it. Texas points out that a life sentence under its law amounts to less than a life sentence because a prisoner becomes eligible for parole after serving 20 years. With good conduct credit, eligibility accrues in 12 years; and with trusty status, in ten years. Texas argues that we should view its recidivist statute as a requirement that a defendant with two or more prior felonies prove himself within the prison system to achieve early release. Therefore, since a well-behaved prisoner could receive a term not grossly disproportionate for one committing a third offense, Texas argues that this court should not equate Rummel's sentence with one for actual incarceration for life.

■ The grant or denial of parole by a state, in the absence of some unusual circumstance, is not reviewable in federal court. If Rummel has a constitutional right not to be committed to prison for the remainder of his life to punish his offenses, then Texas may not deprive him of that right by suggesting it may be willing to interdict its denial by the future exercise of discretion which we have characterized as a matter of administrative grace.[4] Indeed, if the proportionality of Rummel's sentence and hence its constitutionality depended upon the availability of parole, we would have to make a careful review of procedures and evidence in state parole proceedings, since the availability of parole in fact and the accuracy of individual parole decisions then would measure constitutional dimensions.

In most jurisdictions, a sentence to imprisonment for life now stands in the place where the death penalty stood earlier in this century—the ultimate punishment imposed by this society for those crimes most abhorrent to it. Therefore, the question of the proportionality of Rummel's life sentence to the crime of which he was convicted deserves a consideration which may be unnecessary for a lesser sentence.[5]

Rummel draws support for his eighth amendment claim from *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974). In *Hart* the Fourth Circuit held that a sentence imposed under a West Virginia recidivist statute was cruel and unusual based on length alone because it was grossly disproportionate to the crimes involved. The state court enhanced Hart's punishment for committing perjury at his son's murder trial to life imprisonment on the basis of a 1949 conviction for writing a $50 check on insufficient funds and a 1955 conviction of interstate transportation of forged checks worth $140. In determining that the West Virginia statute violated the

4. *Brown v. Kearney*, 355 F.2d 199 (5th Cir. 1966). *See also Johnson v. Wells*, 566 F.2d 1016 (5th Cir. 1978).

It is no answer to suggest that the sentence imposed may never be carried out in fact, because the threat itself makes the punishment obnoxious. *Trop v. Dulles*, 356 U.S. at 102, 78 S.Ct. at 599, 2 L.Ed.2d at 643 (Opinion of Warren, C. J.). We distinguish the case at bar from cases in which we upheld prison terms of

lengths far in excess of a natural life span, *e. g.*, *Yeager v. Estelle*, 489 F.2d 276 (5th Cir. 1973), *cert. denied*, 416 U.S. 908, 92 S.Ct. 1616, 40 L.Ed.2d 113 (1974). In those cases, natural law and not administrative grace invariably prohibited the state from carrying out any punishment greater than life imprisonment.

5. *Cf. Hall v. McKenzie*, 537 F.2d 1232, 1235–36 (4th Cir. 1976); *Wood v. South Carolina*, 483 F.2d 149 (4th Cir. 1973).

eighth amendment as applied to Hart, the Fourth Circuit considered cumulatively (1) the nature of the offense, (2) the legislative purpose behind the punishment, (3) the punishment that the defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction.

The analysis in *Hart* is not inconsistent with our prior applications of the Cruel and Unusual Punishments Clause. We have held that a punishment violates the eighth amendment only if it "is so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." *Rogers v. United States*, 304 F.2d 520, 521 (5th Cir. 1962). But we have never set forth in detail those factors which determine whether this standard has been met where the nature of the offense alone does not confirm the proportionality of the punishment. Some decisions of this circuit have cited *Hart* approvingly.[6] However, because each of these cases involved at least one offense presenting a potential for violence, a strong social interest, or a sentence less severe than life, we upheld the sentence imposed without considering any part of the *Hart* analysis other than its initial inquiry into the nature of the crime.

■ The factors set forth in *Hart* have been central to the Supreme Court's major decisions applying the Cruel and Unusual Punishments Clause, although the Court has not applied them as systematically as did the Fourth Circuit. The nature of the crime figures prominently in *Coker v. Georgia*, 433 U.S. at 598–601, 97 S.Ct. at 2869–70, 53 L.Ed.2d at 993–994 (Opinion of White, J.); *id.* at 602, 97 S.Ct. at 2871, 53 L.Ed.2d at 996 (Opinion of Powell, J.); and *Weems v. United States*, 217 U.S. at 365–

66, 30 S.Ct. at 548, 54 L.Ed. at 797–798. *See also Trop v. Dulles*, 356 U.S. at 92–93, 78 S.Ct. at 593–94, 2 L.Ed.2d at 637–638 (Opinion of Warren, C. J.). *Weems* took the object of the Philippine statute into account in determining that the sentence to painful labor in chains violated the eighth amendment. 217 U.S. at 363, 381, 30 S.Ct. at 547, 554–55, 54 L.Ed. at 804. In *Trop*, both the plurality opinion by Chief Justice Warren and Justice Brennan's concurrence considered the relation between the objectives of Congress and the penalty of denationalization. 356 U.S. at 96–98, 78 S.Ct. at 595–96, 2 L.Ed.2d at 639–641 (Opinion of Warren, C. J.); *id.* at 107–10, 78 S.Ct. at 601–03, 2 L.Ed.2d at 646–648 (Opinion of Brennan, J.). Recent cases also confirm the need to discern the legislative objective and to avoid displacing legislative discretion with judicial discretion. *See, e. g., Gregg v. Georgia*, 428 U.S. 153, 181–182, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859, 879–880 (1976) (Opinion of Stewart, J.), *citing Furman v. Georgia*, 408 U.S. 238, 451, 92 S.Ct. 2726, 2834, 33 L.Ed.2d 346, 472 (1972) (Powell, J., dissenting). Comparisons of challenged punishments with punishments meted out in the same jurisdiction or other jurisdiction have also guided the Supreme Court in its major eighth amendment cases.[7] Because *Hart* applies objective criteria solidly grounded in decisions of the Supreme Court, we hold that its form of analysis properly guides our decision.

In considering the constitutionality of Rummel's sentence, we look first to the nature of the crimes for which he was convicted. Our prior cases found this factor alone determinative where one or more offenses forming the basis for the sentence involved violence, a potential for violence, or a strong social interest. In *Yeager v. Estelle*, 489 F.2d 276 (5th Cir. 1973), *cert.*

---

6. *Capuchino v. Estelle*, 506 F.2d 440 (5th Cir. 1975), *cert. denied*, 423 U.S. 842, 96 S.Ct. 75, 46 L.Ed.2d 62 (1975); *Yeager v. Estelle*, 489 F.2d 276 (5th Cir. 1973), *cert. denied*, 416 U.S. 908, 92 S.Ct. 1616, 40 L.Ed.2d 113 (1974). *Browne v. Estelle*, 544 F.2d 1244 (5th Cir. 1977), cited *Hart* approvingly but dismissed because the issue was not properly presented as a class action.

7. *See, e. g, Coker v. Georgia*, 433 U.S. at 592–595, 97 S.Ct. at 2866–67, 53 L.Ed.2d at 990–991 (Opinion of White, J.); *id.* at 602, 97 S.Ct. at 2871, 53 L.Ed.2d at 996 (Opinion of Powell, J.)

(comparing various states as to modifications to death penalty statutes after *Furman*); *Gregg v. Georgia*, 428 U.S. at 179, 96 S.Ct. at 2928, 49 L.Ed.2d at 878 (Opinion of Stewart, J.); *Weems v. United States*, 217 U.S. at 367–77, 380, 30 S.Ct. at 549–53, 554, 54 L.Ed. at 798–803, 804 (comparing challenged statute with state punishments, penalties available under federal law, and other penalties for more serious crimes in the same jurisdiction). *See also Trop v. Dulles*, 356 U.S. at 102–03, 78 S.Ct. at 599, 2 L.Ed. at 643 (Opinion of Warren, C. J.) (examining denationalization penalties imposed by other nations).

*denied,* 416 U.S. 908, 92 S.Ct. 1616, 40 L.Ed.2d 113 (1974), *citing Hart v. Coiner,* 483 F.2d 136, 139–40 (4th Cir. 1973), we upheld petitioner's 500-year prison term without proceeding to other points of the *Hart* analysis where the petitioner had been convicted of murder with malice. *Capuchino v. Estelle,* 506 F.2d 440 (5th Cir. 1975), *cert. denied,* 423 U.S. 842, 96 S.Ct. 75, 46 L.Ed.2d 62 (1975), upheld a life sentence under the Texas recidivist statute where the state meted out a life sentence to a defendant convicted of one crime involving violence (assault with intent to murder), one involving a potential for violence (burglary), and one implicating a particularly strong social interest (possession of narcotics paraphernalia). Similarly, in *King v. United States,* 565 F.2d 356 (1978), we examined only the nature of the offense in upholding a 15-year sentence for conspiracy to import heroin imposed consecutively with a 10-year sentence previously imposed for the substantive offense.[8]

None of Rummel's offenses present exacerbating factors justifying a severe penalty. Considered in combination, Rummel's crimes, although felonies under Texas law, lack those indicia of depravity generally associated with felonies and the heinousness of the offenses for which life imprisonment is a common punishment. They were substantially separated in time. None involved violence or the potential of violence. Each was solely a property crime and the amounts taken were not substantial.

Second, we consider the legislative objective in making the conduct a punishable

offense. Here the inquiry seeks to determine whether a *significantly* less severe punishment could achieve the purposes for which the challenged punishment is inflicted. *Hart, supra,* 483 F.2d at 141. The Supreme Court has recognized the tension between an inquiry into legislative purpose and the need for federal courts to avoid substituting their discretionary judgment for that of the states. *Gregg v. Georgia,* 428 U.S. at 181–182, 96 S.Ct. at 2929, 49 L.Ed.2d at 879–880 (Opinion of Stewart, J.). In *Weems,* however, the Court showed less deference to the legislative judgment where "the law in controversy seems to be independent of degrees." 217 U.S. at 365, 30 S.Ct. at 548, 54 L.Ed. at 797. This latter condition is present in the case at bar. Article 63 indiscriminately punishes such a broad range of offenses with a mandatory life sentence that we can discern no clear legislative judgment that Texas could achieve its penological objectives only by imposing a life sentence on one such as Rummel.

The Texas recidivist statute aims at protecting citizens from incorrigible repeat offenders. While Rummel's offenses merit punishment, not only individually but also because of their cumulative impact, they hardly suggest that he presents such a threat to society as to call forth its harshest penalty short of death. Whether a particular punishment is grossly disproportionate to a rational penological objective is best answered by the last points of the *Hart* analysis, which compare the punishment imposed with available penalties for other offenses and with penalties in other jurisdictions.

---

**8.** The Circuit which decided *Hart* has taken a similarly restrictive view of the sorts of crimes for which a life sentence can give rise to more than a frivolous claim of constitutional disproportionality. *Griffin v. Warden,* 517 F.2d 756, 757 (4th Cir. 1975), upheld a life sentence for a defendant convicted of grand larceny, burglary, and breaking and entering because these offenses "clearly involve the potentiality of violence and danger to life as well as property." *Hall v. McKenzie,* 537 F.2d 1232 (4th Cir. 1976), upheld a 10 to 20-year sentence imposed upon a defendant in his early twenties convicted of the nonforcible rape of a thirteen year old female in part because the offense was a crime against the person.

Courts applying *Hart* have overturned few sentences. *Davis v. Zahradnick,* 432 F.Supp.

444 (W.D.Va.1977), struck down two twenty-year consecutive sentences for one count of possession of marijuana with intent to distribute and one count of distribution where less than nine ounces was involved. The Sixth Circuit followed *Hart* in striking down 30- to 60-year sentences imposed upon first offenders for the same two offenses under Ohio law. *Downey v. Perini,* 518 F.2d 1288 (6th Cir. 1975), *vacated on other grounds,* 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975). *Roberts v. Collins,* 544 F.2d 168 (4th Cir. 1976), cited *Hart* in holding that the eighth amendment prohibits a state from imposing a greater sentence for a lesser included offense than it could impose for the comprehensive crime. *See also United States v. Neary,* 552 F.2d 1184, 1195 (7th Cir. 1977).

A comparison of Rummel's sentence with the punishment accorded other crimes under Texas law further highlights the irrational severity of the life sentence mandated by Article 63. Because the trial court sentenced Rummel under a repeated offender statute, we consider Rummel's offenses together to determine whether the mandatory life sentence imposed upon him by the statute is proportionate to the combined offenses as compared with similar punishments inflicted under Texas law. *Hart v. Coiner*, 483 F.2d at 142. Apart from its habitual criminal statute, Texas imposes a mandatory life sentence (or death) only for the crime of capital murder: murdering a policeman, fireman, or prison employee, murdering for pay or while escaping from prison, or while committing kidnapping, burglary, robbery, aggravated rape, or arson.[9] The trial court could have imposed a sentence for as little as five years if Rummel had committed a single first-degree felony, such as murder, aggravated rape, or arson.[10] The same five-year minimum would have applied if Rummel had committed a second-degree felony with a prior conviction for another: for example, aggravated kidnapping with a prior conviction for rape or voluntary manslaughter with a prior conviction for burglary. With a single conviction for a second-degree felony, the trial court could impose a term no

longer than 20 years and as short as two years.[11]

Compared with those statutory punishments for violent felonies for which Texas does not bind the trial court's hand in granting leniency, the punishment indiscriminately imposed on Rummel is too harsh. In combination, Rummel's deceitful acts deprived his victims of approximately $230. The record suggests that no harmful consequences beyond the loss of the money itself flowed from his offenses. Intervening action by the Texas legislature underscores the relatively trivial nature of Rummel's third offense, because Texas law now treats a first offense of theft by false pretext only as a misdemeanor.[12]

Comparing Rummel's sentence with the sentence imposed in other jurisdictions for similar offenses, confirms the gross disproportionality between his crime and his sentence.[13] At the time Rummel was convicted several states had statutes allowing the sentencing court to impose a life sentence upon a third felony conviction for crimes such as his. However, only Indiana and Washington made the life sentence mandatory upon the third conviction for any felony. Indiana has since modified its statute[14]

---

9. Tex. Penal Code Ann. § 19.03 (Vernon 1974) defines capital murder. *Id.* § 12.31 sets the punishment at life imprisonment or death.

10. Tex. Penal Code Ann. § 12.32 (Vernon 1974) punishes first-degree felonies with a prison sentence of 5 to 99 years. Murder, *id.* § 19.02, aggravated rape, *id.* § 21.03, and arson, *id.* § 28.02, are among the crimes treated as first-degree felonies.

11. Aggravated kidnapping, Tex. Penal Code Ann. § 20.04 (Vernon 1974), rape, *id.* § 21.03, voluntary manslaughter, *id.* § 19.04, and burglary, *id.* § 30.02(a)–(c) are second-degree felonies, punishable under *id.* § 12.33 for a prison term of from 2 to 20 years. Under *id.* § 12.-42(b), a defendant convicted of his second felony in the second degree is punished as a first-degree felon, thereby requiring a 5-year minimum sentence under *id.* § 12.32.

12. Under the new Texas Penal Code, theft of $120 by false pretext constitutes a Class A misdemeanor. Tex.Penal Code Ann. § 31.-03(b)(1) & (d)(3) (Vernon 1974 & 1977 Supp.). A Class A misdemeanor carries a maximum jail

term of one year, *id.* § 12.21. This legislative change suggests that Rummel's offense ranked low in the hierarchy of felonies under Texas law, although standing alone it has little persuasive value. *Capuchino v. Estelle*, 506 F.2d at 442.

13. This is not a search for a norm or a demand for conformity in these diverse jurisdictions. Some states might validly impose an uncustomarily harsh sentence for an offense not regarded so seriously in others where it has a larger interest in controlling that deviation. It also may impose a stiffer penalty where an offense, non-serious in itself, forms part of a pattern of conduct which is a particular problem for that state. Crimes involving dangerous drugs may fall in this category. None of Rummel's offenses presents such an interest.

14. Under Indiana's new statute, the sentencing court adds a 30-year additional term to the maximum sentence imposed upon a third-time felon. Ind.Code Ann. § 35–50–2–8 (Burns 1977 Supp.). West Virginia's recidivist statute remains on the books, but *Hart* limits its application. W.Va.Code § 61–11–18. Although most

and a decision by the Supreme Court of Washington makes it questionable whether a mandatory life sentence could have been imposed upon one in Rummel's situation.[15] Thus, the state of Texas now stands virtually alone in its unqualified demand for life imprisonment for a three-time felon even where his convictions were for minor property crimes involving neither violence nor a remote possibility of violence.

Our assessment of Rummel's sentence in light of the *Hart* factors leads us to conclude that imposing a life sentence for these three crimes is so grossly disproportionate to the offenses as to constitute cruel and unusual punishment in violation of the eighth amendment. Rummel's offenses involved no special factor sufficient to call forth so severe a sentence. The legislative objective of punishing recidivists certainly is legitimate. However, in view of the dramatically lower minimum penalties that Texas imposes upon defendants who commit even the most violent crimes short of capital murder and even upon defendants with a second conviction and a prior offense involving violent second-degree felonies, it clearly appears that a significantly less severe penalty would fulfill the legislative objectives of protecting citizens and deterring crime. The recent reclassification of Rummel's third offense as a misdemeanor under Texas law buttresses this view. That at most two other states and perhaps none would require life imprisonment for a defendant in Rummel's circumstances confirms the constitutional disproportionality of the sentence given Rummel.

Rummel maintains that a finding that the Texas habitual criminal statute violates

the eighth amendment requires his immediate release. He points out that because a jury sentenced him, Texas law requires a trial de novo in which he may elect to be tried under the new Texas Penal Code, which classifies his third offense as a misdemeanor. Even if he were to receive the maximum sentence as a repeat misdemeanant, he would have served his sentence already. We do not pass upon this theory, but leave the question for the courts of Texas to decide.

We add an important caveat to our holding that the Texas habitual criminal statute, as applied to Rummel in this instance, violates the eighth amendment. Today's precedent signals no beginning for appellate review of judicial sentencing discretion. We expressly recognize both that the prerogative to fix sentence ranges for proscribed criminal conduct belongs to the legislative and not the judicial branch and that it is extremely broad. We hold only that it is not unbounded. We overturn this nondiscretionary judicial action in applying an inflexible legislative edict because it can be objectively demonstrated to be grossly disproportionate to any rational penological objective to be served in this particular case.

The decision of the district court is reversed with directions to grant a writ of habeas corpus for the release of Rummel, unless within 60 days the state of Texas shall resentence him to punishment according to Texas law but not inconsistent with this opinion.

REVERSED and REMANDED with directions.

states impose higher penalties upon third-time felons than upon first-offenders, no other states have determined that all third-time felony offenders must receive a sentence of life in prison. State statutes for the most part employ one or more of the following techniques in determining the additional penalty: (1) punishment is keyed to the grade of the third offense by increasing the minimum punishment or by making the punishment the mandatory maximum, a multiple of the maximum or the maximum plus a fixed term of years; (2) a lengthy sentence is allowed, but its imposition in a particular case is left to the discretion of the sentencing court; (3) a relatively small mandatory minimum is applied to all third-time felons, with greater mandatory punishments available for fourth offenses; (4) severe penal-

ties are required but only for listed violent felonies.

In addition to Indiana, Washington, and West Virginia, the following state statutes appear to require the strictest mandatory punishment for one in Rummel's situation: N.C.Gen.Stat. §§ 14-7.1, -7.6 (20-year minimum); Okla.Stat. Ann. tit. 21, § 51 (West) (20 years plus maximum for third offense). Several states provide for a ten-year minimum for a third offense and a few provide for a mandatory life sentence for a fourth felony conviction.

**15.** In *State v. Lee,* 87 Wash.2d 932, 558 P.2d 236, 240 n. 4 (1977), the Supreme Court of Washington agreed that the sentence in *Hart* was disproportionate, although it found Lee's sentence within constitutional bounds.

THORNBERRY, Circuit Judge, dissenting:

With deference, I must dissent.

Perhaps, if I were the prosecutor, I would not have sought an indictment charging the defendant with an habitual count; if I were a state lawmaker I would vote to amend the statute so that it would not be applied as has been done here; or if I were governor of the State of Texas, I would consider the petitioner a prime candidate for clemency. But I do not hold these offices and my decision must be guided by the eighth amendment rather than my feelings of compassion and justice. In that amendment, I find nothing that compels the result reached by the majority.

The majority accepts Rummel's argument that a life sentence is so grossly disproportionate to the crimes he committed that it cannot withstand an eighth amendment attack. To reach that result the majority focuses on the small amount of money involved and the asserted triviality of all of Rummel's offenses. But Rummel was not sentenced to life imprisonment for stealing $230.00; the life sentence resulted from his having committed three separate and distinct felonies under the laws of Texas. If the state is entitled to characterize a particular criminal act as a felony,[1] and to enforce its constitutional habitual criminal statute,[2] I cannot understand how these two constitutional statutes coalesce to produce an unconstitutional result. No neutral principle of adjudication [3] permits a federal

---

1. The state's right to categorize an offense as a felony and to determine appropriate punishment in the first instance is beyond dispute. That this is so is demonstrated by the variety of statutory schemes relating to the type of offenses for which Rummel received habitual criminal treatment. Not only do some statutes retain the technical common law distinctions, *compare* Fla.Rev.Stat.Ann. § 812.021 (grand larceny statute) with Ga.Code Ann. 26–1803, et seq. (theft statutes), but the dollar amounts necessary to comprise a felony offense vary considerably. *See* Alabama Code Ann., Tit. 14, § 331 (Cum.Supp.1973) (felony to take personal property worth more than $25.00); Fla.Rev. Stat.Ann. § 812.021 (felony to take property worth more than $100 or of an aggregate value of $200 in a twelve month period); Miss.Code Ann. § 97–17–41 (felony to take property worth more than $100). Thus I assume that Texas' right to impose a monetary boundary on felony offenses could not have been challenged by the petitioner. That Texas has since raised that limit is irrelevant. Prior law in this circuit so dictates. In *Capuchino v. Estelle,* 506 F.2d 440 (5 Cir. 1975), the petitioner was convicted of possession of narcotics paraphernalia. Two prior non-capital felonies were used for enhancement and he received a life sentence under the very statute the present petitioner challenges. In upholding the denial of habeas corpus, the panel specifically rejected the rationale of *Hart v. Coiner,* 483 F.2d 136 (4 Cir. 1973), cert. denied, 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974), despite the fact that at the time of his habeas Capuchino could not have been convicted of more than a misdemeanor for which he could have served a year in jail.

2. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). The majority concedes that the Texas statute is not unconstitutional

but adopts an "unconstitutional-as-applied" approach to determine that in this instance the statute is invalid. The cases cited by the majority to support its approach are, however, inapposite to the issue in this case.

3. The majority embraces the disproportionality rationale of *Hart v. Coiner, supra,* because it "applies objective criteria" to eighth amendment determinations. With due respect to my colleagues, I find no such objectivity in today's decision. The first of the four criteria requires a court inquiry into the "nature of the crime." The characterization of Rummel's crimes as minor property offenses is a subjective one based on the majority's decision that there simply was not enough money involved to permit the state to exact a life imprisonment. For many $200.00 is not an insignificant sum of money. To state that a crime is one against property does not dispose of the difficulty involved in these cases. That difficulty is apparent in later Fourth Circuit decisions. Two years after *Hart* was written, its own author refused to apply it in *Griffin v. Warden, West Virginia State Penitentiary,* 517 F.2d 756 (4th Cir.), cert. denied, 423 U.S. 990, 96 S.Ct. 402, 46 L.Ed.2d 308 (1975). Griffin was charged with grand larceny. His two prior offenses were breaking and entering and burglary of a residence. The court stated:

> These and grand larceny are serious offenses that clearly involved the potentiality of violence and danger to life as well as property. Whether or not Griffin may be actually deserving of such extreme punishment is not within our province to decide; . . . ..

*See also Wood v. State of South Carolina,* 483 F.2d 149 (4 Cir. 1973) (refusing to apply *Hart* to a five-year sentence for an obscene telephone call; defendant had prior convictions for larceny and auto theft).

court to hold that in a given situation individual crimes are too trivial in relation to the punishment imposed. I know of no stopping point for today's decision.

While it is well-settled that the eighth amendment circumscribes legislative power to punish crime,[4] the balance to be struck when a court enters this traditionally legislative field is not easily determined. The judicial function lies somewhere between abdication of fundamental responsibility in the guise of judicial restraint and the insertion of judicial conceptions of wisdom and propriety. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 2741, 33 L.Ed.2d 346 (1972) (Brennan, J. concurring). To my mind, the majority has strayed too far in the latter direction.

In doing so, the majority deprecates the state's interest in protecting its citizens from the repetition of property crimes. Having found that Rummel was not "depraved," "heinous," or "incorrigible," the majority facilely submits that he does not pose such a threat to society to merit life imprisonment. In spite of an attempt to limit this case through an "unconstitutional-as-applied approach," the result of its conclusion will surely be an attack on the habitual offender statute in every instance of its attempted application to property crime. However, nothing in the court's opinion informs state prosecutors, courts, or legislatures of the possible limits of error.

Moreover, today's decision signals a departure from longstanding precedent in this circuit. In *Rogers v. United States*, 304 F.2d 520 (5 Cir. 1962), the defendant was convicted of possession of a letter stolen from an authorized mail depository, forgery of a treasury check and the uttering of forgery with intent to defraud the United States. The treasury check underlying the offenses was for $380.51. None of Rogers' prior convictions involved violence. The panel affirmed his twenty-five-year sentence as within the statutory limit and found it unnecessary to pass on whether the sentence was within the eighth amendment standards.[5] In *Rener v. Beto*, 447 F.2d 20 (5 Cir. 1971), *cert. denied*, 405 U.S. 1051, 92 S.Ct. 1521, 31 L.Ed.2d 787 (1972), the court upheld a thirty-year sentence for the possession of a single marijuana cigarette with the following statement:

> This Circuit has long followed the principle that a sentence within the statutory limits set by a legislature is not to be considered cruel or unusual. (citations omitted). A sentence of thirty years is within the range of punishment prescribed by the Texas Penal Code for a second offense of possession of marijuana.

If the majority's analysis is correct, Rummel's case is indeed the "easy" one in which to apply it. Here the court faces an individual charged with what may seem to many to be insignificant offenses when the spotlight is on the amount of money involved. Surely the principle of decision cannot be the dollar sign, and the court gives no other indication where the line is to be drawn. Whatever sociological analysis I might apply to this case, I cannot avoid the conclusion that with this decision we stand on the brink of the "slippery slope" in its most classic sense. For that reason I cannot add my voice to that of the majority and must respectfully—but firmly—DISSENT.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, THORNBERRY, COLEMAN, GOLDBERG, AINS-

---

The second prong of the *Hart* test, whether the penalty was necessary to accomplish the legislative purpose, is subject to the same criticism as the first. The last element, comparison of punishment of other offenses is limited by *Capuchino, supra*. This leaves only the third element that Texas' penalty is harsh in comparison with other states to support the majority opinion.

**4.** *See Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Furman v.*

*Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

**5.** *See also Yeager v. Estelle*, 489 F.2d 276 (5 Cir.), *cert. denied*, 416 U.S. 908, 94 S.Ct. 1616, 40 L.Ed.2d 113 (1973). (Citing *Hart*, but refusing to overturn a "patently absurd" 500-year sentence for murder with malice.)

WORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.