**James MULLINS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

June 30, 1978.

Certiorari Denied by Supreme Court Sept. 18, 1978.

C. Dwaine Evans and Ronald L. Perkins, Morristown, for appellant.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, Heiskell H. Winstead, Dist. Atty. Gen., Rogersville, Charles E. Fraley, Jr., Asst. Dist. Atty. Gen., Morristown, for appellee.

## OPINION

DUNCAN, Judge.

The appellant-defendant, James Mullins, was convicted in the Hamblen County Criminal Court of burglary and larceny. These were the triggering offenses for the subsequent finding by the jury that the defendant was an habitual criminal. He was sentenced to the penitentiary for life as his enhanced punishment.

In this appeal, the defendant assigns errors concerning the court's rulings on his motions to dismiss the indictment, the alleged insufficiency of the evidence, the testimony of certain witnesses, and the attorney general's argument. He also attacks the alleged unconstitutional application of the habitual criminal statutes. We find no reversible errors and affirm the judgment.

First, we find that the court did not err in overruling the defendant's plea in abatement because of an alleged misnomer in the indictment. The defendant, in his plea, alleged that the fifth count of the indictment, charging him with being an habitual criminal incorrectly alleged his name in the caption as *James E. Mullins*, rather than by his true name of *James Junior Mullins*. The

first four counts of the indictment alleged the defendant's name to be *"James Mullins."* In the habitual criminal count (fifth count), it was charged that *"James E. Mullins"* became an habitual criminal by reason of his having "been convicted of six (6) separate felonies." This count of the indictment then goes on to allege five prior convictions, and makes five different allegations that "the defendant, *James Junior Mullins*," was the name of the person who had been so previously convicted.

By referring to all of the allegations in the fifth count, we find that this count sufficiently complies with the mandate of T.C.A. § 40–1803, which requires that the indictment "must be certain as to the person charged." This count, in enumerating the defendant's prior convictions, refers to him as the "defendant," and it alleges his true name of *James Junior Mullins* in five separate places.

■ The law requires that the party charged be notified by the indictment of the transaction in relation to which he is called on to defend himself. *Rugg v. State*, 141 Tenn. 362, 210 S.W. 630 (1918); *State v. Woodson*, 24 Tenn. (5 Humph.) 55 (1844).

The case of *Inman v. State*, 195 Tenn. 303, 304–05, 259 S.W. 531, 532 (1953), correctly states the law as follows:

"The true test of the sufficiency of an indictment or a presentment is 'whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction" '." (citations omitted)

Moreover, the allegation of his name as *"James Mullins"* in the first four counts was a sufficient allegation, and our Supreme Court has held that in a multi-count indictment, references in one count may be used in aid of identification allegations made in another count. *Chapple v. State*, 124 Tenn. 105, 135 S.W. 321 (1910).

In 2 Wharton's Criminal Procedure § 278, at 92 (C. Torcia 12th ed. 1975), a general rule is stated that:

". . ., if the defendant is otherwise adequately identified, a mistake in or omission of his middle name or initial does not render an indictment or information insufficient."

The defendant cites the case of *State v. Hughes,* 31 Tenn. (1 Swan) 261 (1851), to support this proposition that the middle name or initial of a defendant, if stated in the indictment, must be correctly stated, otherwise it will be a fatal defect if attacked by a plea in abatement. The *Hughes* case is distinguishable from the present case because it only involved a one-count indictment, and nowhere in that count was the defendant otherwise correctly named. Thus, unlike the present indictment, there were no other allegations to which reference could be made to supply the necessary identification.

In view of all the allegations in this indictment, we see no way in which the defendant could have been misled. It gave him adequate notice that he should come to court prepared to defend himself not only on the triggering offense but also on the habitual criminal charge. Our cases have held that a variance between pleading and proof in a criminal case is not material where the variance could not have misled the defendant at the trial. *State v. Yates,* 217 Tenn. 160, 395 S.W.2d 813 (1965); *Brown v. State,* 186 Tenn. 378, 210 S.W.2d 670 (1948).

■ We find that the fifth count of this indictment adequately and unquestionably identifies the defendant, and it is sufficient to protect him in any future prosecution for the same offense. We overrule this assignment of error.

■ Next, the defendant says that the trial court erred in failing to dismiss the indictment because he did not have the assistance of counsel at his preliminary hearing. In an affidavit attached to his motion, the defendant maintains that at the time of his preliminary hearing he was rep-resented by Attorney Randall Shelton on two other charges, but not on the present case, and that he didn't waive his right to a preliminary hearing or counsel. We note that the face of the arrest warrant in this case contains the name of Randall Shelton, which would indicate that he represented the defendant on this case also. It also shows that the defendant was bound over to the grand jury on March 8, 1977. Actually, the defendant's affidavit can serve as no proof of what occurred at the preliminary hearing, as it only appears in the technical record and was not made a part of the bill of exceptions. *Baldwin v. State,* 204 Tenn. 639, 325 S.W.2d 244 (1959); *Letner v. State,* 512 S.W.2d 643 (Tenn.Cr.App. 1974).

■ Moreover, if the defendant's complaint is that he was denied a preliminary hearing, then that complaint is also without substance. He was arrested on February 17, 1977, and his motion to dismiss the indictment for lack of a preliminary hearing was not filed until October 21, 1977. Our preliminary hearing statute, T.C.A. § 40–1131, provides that no motion for abatement of the indictment because of a denial of a preliminary hearing shall be granted after the expiration of 30 days from the date of an accused's arrest. *See Hamilton v. State,* 555 S.W.2d 724 (Tenn.Cr.App. 1977). Further, we would point out that the record is silent as to how and in what manner the defendant has sustained any prejudice by reason of the developments that did or did not occur at his preliminary hearing. We overrule this assignment.

■ Also, there is no merit to the defendant's assignment that the first count of the indictment should have been dismissed because it did not allege that the breaking and entering occurred in the daytime. Because "commission during the daytime is not an essential element of burglary in the second degree," *Ledger v. State,* 199 Tenn. 155, 158–59, 285 S.W.2d 130, 131 (1955), it would necessarily follow that there is no requirement for the indictment to allege that the offense occurred in the daytime.

In two assignments of error, the defendant challenges the legal sufficiency of the convicting evidence.

The undisputed evidence in this case was that on February 15, 1977, in the daylight hours between 7:15 a. m. and 4:30 p. m., the home of Mr. and Mrs. Billy Dehart was burglarized and, among other items, two Winchester rifles, a pistol, and a ring were stolen from their home. On February 16, A. M. Brown and Jonna Gates went to the B & G Truck Stop where the defendant was employed, and Brown purchased the above enumerated stolen items from the defendant. Brown was a professor at Walter's State College and was working undercover for the sheriff's department. The defendant took Brown and Gates to a shed nearby the truck stop, where the guns, wrapped up in a bed cloth, had been secreted. Brown testified that he told the defendant he wanted to know where the "stuff" came from, and the defendant's response was, "I got it out of a house about 10 miles down the road here." In discussing the sale of the diamond ring with Brown, the defendant told him, "I know this is a good diamond ring because if you'll read tonight's paper, it will tell you in there the house it came out of . . . I took it and it's worth three thousand three hundred dollars." Other evidence established that Brown paid the defendant for the stolen property with marked money, and upon the defendant's arrest, the substantial portion of this marked money was found on his person. It was also shown by the evidence that it was approximately seven miles from the truck stop to the community where the Deharts lived. Additional evidence established that when the defendant was arrested he was shown the stolen guns and asked if he had ever seen them before to which he replied, "I ought to kill them two s.o.b's."

The defendant did not testify on the first phase of the trial, but offered witnesses who attempted to alibi him for the date of the burglary. The only witness who attempted to account for the defendant's whereabouts prior to 11:00 a. m. on the date of the burglary was Curtis Lee Lovell. Obviously, the jury was swayed in their evaluation of his testimony because they had heard previous testimony that a few days prior to the present burglary, Lovell had participated with the defendant in a discussion with Gates about purchasing stolen guns. In any event, the jury rejected the defendant's alibi defense.

With the stolen property being found in the defendant's possession the day following the burglary, and in the total absence of any explanation in the record for such possession, the jury was entitled to draw an inference that the defendant had stolen this property. *Bush v. State*, 541 S.W.2d 391 (Tenn.1976). This unexplained possession, along with the testimony of Gates and Brown, and particularly considering the incriminating statements made by the defendant to Brown, clearly show that the defendant burglarized the Dehart home and stole the subject items.

Regarding the jury finding that the defendant was an habitual criminal, we find that the State offered court records to show that the defendant had been previously convicted in five burglary cases. The defendant was identified by an officer as being the same person who had been previously convicted. In fact, the defendant testified on this phase of the trial and admitted these prior convictions. The jury had no reasonable alternative other than to find the defendant guilty of being an habitual criminal.

The evidence in this case is more than sufficient to support the jury's verdict finding the defendant guilty of the triggering offense as well as its finding that the defendant was an habitual criminal. We overrule his assignments on the evidence. *Anderson v. State*, 207 Tenn. 486, 341 S.W.2d 385 (1960).

In another assignment, the defendant complains that the testimony of A. M. Brown implicated the defendant in another burglary case.

At one point in Brown's testimony about his conversations with the defendant, he said that the defendant stated to him:

"I've got some guns out there in the shed but I don't have the ten that you all were to come here and pick up but I've got some more guns, the ten that I had I had to sell them right quick and get rid of them, said I've got a burglary case coming up."

Without any objection being interposed by the defendant, the court interrupted the witness and said:

"Sustained. Don't pursue that. Ladies and Gentlemen, you will not consider that. You will strike it from your mind and not consider it for any purpose."

■ Any error·that could be said to have occurred was rendered harmless by the court's curative instruction. *Bennett v. State*, 530 S.W.2d 788 (Tenn.Cr.App.1975).

■ At another point in this testimony, Brown made some reference to the defendant having told him that he had disposed of some other guns "to pay for a lawyer." The defendant made no objection to this testimony and cannot now complain. *Ezell v. State*, 220 Tenn. 11, 413 S.W.2d 678 (1967). These assignments are overruled.

In two other assignments, the defendant alleges error in the introduction of testimony about a burglary case in which he was found not guilty and also complains of the attorney general's argument. These matters occurred during the habitual criminal phase of this bifurcated trial.

Regarding the first point, the clerk of the court commenced to read from the court's minutes regarding the defendant's prior convictions and erroneously began to read a minute entry on a case in which the defendant had been found not guilty. At that point, the court interrupted and admonished the jury by saying: "Ladies and gentlemen of the jury, you will disregard the consideration of that case because there was a verdict of not guilty."

On the second point, regarding the attorney general's argument, in referring to the testimony of Brown, which had not been objected to, that the defendant had said that he had "four or five places he was going to hit," the attorney general inquired of the jury: "Whose were they? Were they yours?" Here again, we find that the court sustained the defendant's objections and told the jury to disregard the statement.

■ These innocuous errors were not prejudicial to the defendant. The court acted properly in instructing the jury to disregard them, and it is presumed that they did so. *Bennett v. State, supra.* Moreover, we would add that these complaints about the habitual criminal phase of the defendant's trial pale to insignificance when it is considered that the only issue before the jury at this stage is whether the defendant on trial has been previously convicted of the requisite number of prior specified felonies to make him eligible to be found guilty and punished as an habitual criminal. The evidence is clear that the defendant had been previously convicted of five prior burglary offenses, all of which fall within the specified category of offenses enumerated in T.C.A. § 40–2801. These assignments are overruled.

■ Further, it was not error for the court to permit the witness, Jonna Gates, to testify that he had had a burglary at his residence. The obvious inference to be drawn from this record is that Gates was encouraged to assist the police in this case by his general interest in ferreting out crime because he had been previously victimized himself. The testimony was competent to show Gates' reason for becoming involved in the present case. At any rate, no prejudice resulted to the defendant, because Gates' testimony in no way implicated the defendant in this other offense.

In his final assignment, the defendant says that the habitual criminal statute as applied to him in this case abridged his eighth amendment protection from cruel and unusual punishment.

■ Under the eighth amendment, a sentence is not excessive and does not constitute cruel and unusual punishment when it does not involve the unnecessary wanton infliction of pain, and when it is not grossly out of proportion to the severity of the crime. *Coker v. Georgia*, 433 U.S. 584, 97

858

S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

In upholding the constitutionality of our habitual criminal statutes, our courts have consistently held that the enhanced penalty required by such statutes does not constitute cruel and unusual punishment. *Pearson v. State*, 521 S.W.2d 225 (Tenn.1975); *Canupp v. State*, 197 Tenn. 56, 270 S.W.2d 356 (1954); *Moore v. State*, 563 S.W.2d 215 (Tenn.Cr.App.1977). The defendant concedes this point but insists that while not unconstitutional *per se,* the habitual criminal statutes are unconstitutional in his case because of the manner in which they were applied to him. His argument here is that his underlying prior convictions as well as his juvenile status at that time are such as to make a life sentence unconstitutionally disproportionate and so grossly excessive as to amount to cruel and unusual punishment.

We are unable to accept this line of reasoning. It is true that the defendant was a juvenile, 16 years of age, at the time of his five prior burglary convictions, but he had been properly certified from juvenile court to the criminal court for prosecution as an adult. He was tried, found guilty, and sentenced as an adult. In *Pearson v. State, supra*, our Supreme Court stated that, "When a defendant is tried, convicted and sentenced as an adult, the provisions of the habitual criminal law are applicable, if the other criteria are met."

Also, it must be remembered that the defendant is not being punished for his prior crimes. Those crimes brought about his status, but his present sentence is the enhanced punishment for this 23 year old defendant's present crime. *Harrison v. State*, 217 Tenn. 31, 394 S.W.2d 713 (1965).

The defendant cites the case of *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973) *cert. denied*, 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974), where the court held that the mandatory life sentence imposed by the facially valid West Virginia recidivist statute was so excessive and disproportionate to the underlying offenses that it constituted a violation of the eighth amendment prohibition against cruel and unusual punishment. The defendant also cites *Rummel v. Estelle*, 568 F.2d 1193 (5th Cir. 1978), which followed the disproportionality rationale of *Hart v. Coiner, supra.*

These two cases are readily distinguishable from the present case. The triggering offense in *Hart* was perjury committed at the murder trial of that defendant's son, and the underlying offenses were only two in number, namely, writing a bad check for $50.00, and interstate transportation of forged checks involving amounts totalling $140. In *Rummel*, the triggering offense was obtaining $120.75 under false pretenses, and the underlying offenses were also only two in number, namely, fraudulent use of a credit card involving $80.00 and passing a forged check with a face value of $28.36.

The underlying offenses in *Hart* and *Rummel* can hardly be equated with the defendant's underlying five prior burglary offenses. The same thing must be said in comparing the *Hart* and *Rummel* triggering offenses with the defendant's triggering offense.

We would add that the same circuit that decided *Hart,* later upheld a life sentence in *Griffin v. Warden*, 517 F.2d 756, 757 (4th Cir. 1975), for a defendant convicted of grand larceny, whose underlying convictions were for burglary of a business house and burglary of a residence. In pointing out the dissimilarity between these offenses and those in *Hart,* the court said Griffin's offenses "clearly involve the potentiality of violence and danger to life as well as property." The same thing can be said for the present defendant's offenses. We find no merit to this complaint.

We overrule all of the defendant's assignments of error and affirm the judgment of the trial court.

WALKER and TATUM, JJ., concur.